IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

BADRIA HINDI,

   Plaintiff,

v.            No.

CITIBANK, N.A.,
EQUIFAX INFORMATION SERVICES, LLC,
EXPERIAN INFORMATION SOLUTIONS, INC., and
TRANSUNION, LLC,

   Defendants.


**COMPLAINT FOR DAMAGES AND JURY DEMAND**

1.   Plaintiff Badria Hindi is an 83-year-old woman who takes pride in living independently in Albuquerque, New Mexico, surviving on a very limited fixed income.

2.   In 2021, a merchant incorrectly charged nearly $7,000 to Ms. Hindi's Citibank credit card.

3.   The charge should have been easy to resolve; in response to Ms. Hindi's dispute the merchant immediately provided Citibank with a copy of the receipt, showing someone else's name and credit card number.

4.   But after more than a year of fruitless efforts by Ms. Hindi, Citibank persists in illegally demanding payment for the charge and has damaged Ms. Hindi's credit reputation by reporting the charge to Equifax, Experian, and TransUnion.

5.   When Ms. Hindi disputed the factually inaccurate charge to these credit reporting agencies, they also refused to correct it.

6.   Defendants' callous disregard for Ms. Hindi's financial well-being caused her significant injuries.

7. Plaintiff brings claims against Defendants for violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq*., the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*., the New Mexico Unfair Practices Act ("UPA"), NMSA § 57-12-1 *et seq.,* and for tortious debt collection, breach of contract, and breach of the covenant of good faith and fair dealing.

**Parties**

8. Plaintiff Badria Hindi is a natural person residing in Albuquerque, New Mexico.

9. Ms. Hindi is a "person" as defined by the TILA, 15 U.S.C. § 1602(e).

10. Ms. Hindi is a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c).

11. Defendant Citibank, N.A. ("Citibank"), is a New York, New York bank that issues credit cards.

12. Citibank is a "creditor" as defined by 15 U.S.C. § 1602(g).

13. Citibank is a "furnisher of information" as defined by the FCRA, 15 U.S.C. §§ 1681s-2(a) and (b). Citibank regularly and in the ordinary course of its business furnishes information to one or more consumer reporting agencies about its consumer transactions.

14. Defendant Equifax Information Services, LLC ("Equifax") is a limited liability company based in Atlanta, Georgia.

15. Equifax operates nationwide as a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f). Equifax assembles or evaluates consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties and uses means of interstate commerce for the purpose of preparing or furnishing consumer reports.

16. Defendant Experian Information Solutions, Inc. ("Experian") is a corporation based in Costa Mesa, California.

17.   Experian operates nationwide as a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f). Experian assembles or evaluates consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties and uses means of interstate commerce for the purpose of preparing or furnishing consumer reports.

18.   Defendant TransUnion, LLC ("TransUnion") is a limited liability company based in Chicago, Illinois.

19.   TransUnion operates nationwide as a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f). TransUnion assembles or evaluates consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties and uses means of interstate commerce for the purpose of preparing or furnishing consumer reports.

20.   The conduct set forth in this Complaint occurred in the regular course of the trade or commerce of each defendant.

### Jurisdiction and Venue

21.   This Court has jurisdiction under the TILA, 15 U.S.C. § 1640(e); the FCRA, 15 U.S.C. § 1681p; and under 28 U.S.C. §§ 1331 and 1337.  This Court has supplemental jurisdiction over the state claims under 28 U.S.C. § 1367.

22.   Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because the events giving rise to this Complaint occurred within the district.

### Facts

23.   Badria "Buddy" Hindi is an 83-year-old woman who lives by herself in Albuquerque, New Mexico, and survives almost exclusively on her Social Security retirement benefits.

24.     Ms. Hindi opened a Citibank credit card account in 2016.

25.     The Citibank credit card was a "credit card" as defined by 15 U.S.C. § 1602(l).

26.     Citibank was the "card issuer" as defined by 15 U.S.C. § 1602(o).

27.     Ms. Hindi was the "cardholder" as defined by 15 U.S.C. § 1602(n).

28.     Ms. Hindi opened the Citibank credit card account for personal, family, or household purposes.

29.     Citibank and Ms. Hindi entered into a cardholder agreement.  This contract is in the possession of Citibank.

30.     Upon information and belief, the contract stated that Ms. Hindi would only be liable for transactions made by her, an authorized user, or other people permitted by her or an authorized user to make a transaction.

31.     Upon information and belief, the contract also stated that Citibank would only report legitimate information about the account to credit reporting agencies ("CRAs") and would research any disputes.

32.     After opening the account, Ms. Hindi was a loyal Citibank customer for years, paying her bill on time every month.

33.     In December of 2021, Ms. Hindi visited Las Vegas, Nevada, with her friend, Marti Kessler.

34.     During the visit, Ms. Hindi and Ms. Kessler made purchases at a store called Perfume Eleven.

35.     Ms. Hindi purchased cosmetic items in the amount of $270.93 using her Citibank credit card.

36.     Ms. Kessler purchased cosmetic items in the amount of $6,827.31.

37. In mid-December 2021, Ms. Hindi received her statement from Citibank and was shocked to see that the balance was $8,424.86—far higher than her average monthly spending and much more than her monthly income.

38. Ms. Hindi reviewed the bill and saw two charges from Perfume Eleven: the first was the legitimate charge of $270.95[1], and the second was a charge for $6,827.31—Ms. Kessler's transaction.

39. Ms. Hindi did not authorize the $6,827.31 charge on her Citibank credit card.

40. The charge was made by a person who did not have actual, implied, or apparent authority to use her credit card.

41. Ms. Hindi received no benefit from the $6,827.31 charge.

42. In short, the $6,827.31 charge was an "unauthorized use" as defined by 15 U.S.C. § 1602(p).

43. Ms. Hindi immediately called Citibank and alerted it to the unauthorized use.

44. In the call, Ms. Hindi informed Citibank that while she agreed with the $270.95 charge, she did not agree with the $6,827.31 charge. Ms. Hindi disputed its validity and asked Citibank to investigate it.

45. The TILA provides that "a cardholder incurs no liability from the unauthorized use of a credit card", which a few enumerated exceptions.  15 U.S.C. § 1643(d).

46. Even if the exceptions are met, the maximum liability is $50.  15 U.S.C. § 1643(c).

47. Once a card issuer is notified of an unauthorized charge, it is required to follow specified resolution procedures.  12 C.F.R. § 1026.13(a)(1).

---

[1] The invoice total for Ms. Hindi's purchase was $270.93, but Perfume Eleven apparently rang up the charge for $270.95.

48.     The notice need not be in writing.  12 C.F.R. § 1026.12(b)(3) (official interpretations).

49.     The procedures triggered by notice include the requirement to conduct a reasonable investigation.  12 C.F.R. § 1026(c).

50.     Unless a reasonable investigation demonstrates that the charge is legitimate, the consumer bears, at most, a $50 liability for any unauthorized charge.  12 C.F.R. § 1026(d)(1).

51.     The card issuer is also barred from making adverse credit reports.  12 C.F.R. § 1026(d)(2).

52.     Citibank agreed to investigate Ms. Hindi's dispute and preliminarily reversed the charge pending an investigation.

53.     However, no reasonable investigation took place.

54.     Instead, Citibank asked the merchant for an explanation of the disputed charges and then ignored the merchant's response.

55.     Specifically, in response to Citibank's request for an explanation, the merchant provided two credit card signature receipts and their corresponding invoices to Citibank.

56.     One receipt and invoice is clearly Ms. Hindi's purchase, showing the authorized $270.95 charge, the last four digits of Ms. Hindi's credit card number, Ms. Hindi's name, and Ms. Hindi's signature.

57.     Exhibit 1A, reproduced here, is a true and accurate copy of the $270.95 credit card receipt received by Citibank as part of its investigation:



58.     But the receipt the merchant provided to justify the disputed charge is clearly not Ms.

Hindi's purchase; it has a different account number, has Ms. Kessler's name, and bears

what appears to be Ms. Kessler's signature.

59.     Exhibit 1B, reproduced here, is a true and accurate copy of the $6,827.31 credit card receipt

received by Citibank as part of its investigation:



60.    Even a cursory review of the response from the merchant and the receipts provided would have shown that the $6,872.31 charge was unauthorized and improper.

61.    But Citibank did not even bother to review the documents provided by the merchant.

62.    In a letter dated April 21, 2022, Citibank wrote to Ms. Hindi with the results of its investigation, including the two receipts.

63.    In the letter, Citibank told Ms. Hindi that it would not refund the disputed charge unless she provided proof that she had returned the merchandise that was the subject of the disputed charge.

64.    Of course, because Ms. Hindi clearly had never purchased the merchandise, Ms. Hindi could not return it.

65.   Ms. Hindi immediately wrote to Citibank and pointed out that its own investigation had

yielded glaringly undeniable evidence that she should not be held liable.  She provided

Citibank with copies of the merchant documents Citibank had sent to her and hand-wrote

on the documents notes that would have made clear Citibank was wrong—if Citibank had

bothered to read them.  Exhibit 1B contains a true and accurate copy of a note received by

Citibank stating "this is not my 1. credit card 2. My name 3. My signature":



66.   Citibank received Ms. Hindi's written correspondence disputing the validity of the

merchant invoices and receipts but never responded.

67.   Instead, on May 23, 2022, Citibank reinstated the full $6,872.31 charge.

68.   Ms. Hindi continued calling Citibank in an attempt to get someone to review the merchant

documents to see what they plainly proved.

69.   Instead of investigating, Citibank sent generic, vague letters suggesting Ms. Hindi had

failed to provide Citibank with adequate information to investigate the dispute.

70.   In a letter dated July 5, 2022, Citibank acknowledged having received dispute

correspondence from Ms. Hindi. But it again refused to investigate her dispute.

71.   Exhibit 2, reproduced here, is a true and accurate copy of the July 5, 2022 letter Citibank

sent to Ms. Hindi:

> We are writing in response to your most recent correspondence to us. Please understand we are required to follow certain rules and regulations during the dispute process. We must provide certain information to the merchant's bank to prove a charge is invalid. When this information is not provided, we are unable to proceed further in the dispute. We regret we are unable to assist you through the dispute process. We appreciate your feedback and apologize for any inconvenience you may have experienced. Our goal is to provide you with the highest standard of service.

72.   This "canned" response demonstrates that at all times, Citibank failed to take any steps to conduct a meaningful investigation of Ms. Hindi's dispute or actually review the correspondence she sent as part of that dispute.

73.   Citibank sent Ms. Hindi a letter dated July 15, 2022, informing her that her dispute had been closed.  Exhibit 3 is a true and accurate copy of the letter.

74.   In that July 15, 2022, letter, Citibank wrote Ms. Hindi "accepted responsibility for the disputed charge(s) when [she] provided [her] account number for the transaction," despite the fact that documents produced in Citibank's own investigation proved that she had done no such thing.

75.   In that same letter, Citibank warned Ms. Hindi that it would begin reporting her account as past due if she did not make payments on the disputed charges.

76.   Citibank reported the disputed $6,872.31 charge to CRAs Equifax, Experian, and TransUnion, harming Plaintiff's credit reputation.

77.   Citibank continued sending billing statements asserting its entitlement to collect the unauthorized charge, adding interest and late fees.

78.   Ms. Hindi continued to call Citibank to dispute the charges.

79.   Despite repeatedly telling anyone who would listen her story, Ms. Hindi received no substantive response from Citibank.

80.     Citibank continued sending Ms. Hindi written responses to her repeated correspondence. In each one, Citibank continued to misrepresent the nature of the charge, the nature of her dispute, or the nature of the actions it had taken in response to her dispute.

81.     For example, in a letter dated August 22, 2022, Citibank wrote that it had "reviewed all the documents pertaining to [Ms. Hindi's] dispute with the merchant," which was obviously not true. Had Citibank done so, it would have immediately recognized that the charges were not valid.

82.     In that August 22, 2022, letter, Citibank went on to erroneously claim that it had "no options available to assist [Ms. Hindi]" in her continued dispute.

83.     Despite Ms. Hindi's repeated calls and pleas for help, Citibank took no further action to investigate or correct the unauthorized charges.

84.     Instead, Citibank continued calling Ms. Hindi, seeking payment.

85.     Sometimes, Citibank and its debt collectors called Ms. Hindi as many as four times per day.

86.     Over the course of this dispute, Ms. Hindi paid Citibank for all legitimate charges on her account but refused to pay the $6,872.31.

87.     A review of her statements and payments made, however, shows that Ms. Hindi was forced to pay fees and interest charges assessed by Citibank because of the disputed charge.

88.     Ms. Hindi repeatedly disputed Citibank's negative and false credit reports with Citibank and Equifax, Experian, and TransUnion.

89.     On December 19, 2022, Ms. Hindi sent dispute letters ("the December CRA Dispute Letters") to Equifax, Experian, and TransUnion.

90.     Exhibits 4A, 4B, and 4C are true and accurate copies of the December CRA Dispute Letters (redacted as to confidential personal information).

91.     Equifax, Experian, and TransUnion received the December CRA Dispute Letters.

92.     The December CRA Dispute Letters fully identified Ms. Hindi and the Citibank credit report account, contested Citibank's negative and false reporting of the $6,872.31 charge, and asked Equifax, Experian, and TransUnion to conduct a reinvestigation, pursuant to 15 U.S.C. § 1681i(a).

93.     Ms. Hindi enclosed with the December CRA Dispute Letters proof Citibank's credit reporting was factually inaccurate, including the merchant invoices and receipts and the December 2021 statement showing the disputed charge.

94.     Each of the CRAs willfully or negligently refused to conduct reinvestigations of Citibank's credit reporting or to correct the inaccurate credit reporting, as required by the FCRA, 15 U.S.C. § 1681i(a).

95.     In a letter dated January 3, 2023, Experian responded to the December CRA Dispute Letter by claiming it suspected the letter was not from Ms. Hindi and refusing to reinvestigate. Experian did not inform Ms. Hindi what, if anything, she could do to prove that the December CRA Dispute Letter was legitimate.

96.     In a letter dated January 5, 2023, Equifax responded to the December CRA Dispute Letter by claiming it required more information from her to prove her identity, also refusing to reinvestigate unless such information was obtained.

97.     TransUnion did not respond to the December CRA Dispute Letter and upon information and belief, failed to conduct a reinvestigation.

98.     Upon information and belief, the December dispute letters were provided by the CRAs to Citibank.

99.     Upon information and belief, Citibank willfully or negligently failed to conduct a reinvestigation and instead confirmed the validity of the accounts, contrary to the FCRA, 15 U.S.C. § 1681i(a) and 1681s-2(b).

100.    On January 12, 2023, Ms. Hindi sent updated CRA Dispute Letters to each of the CRAs ("the January CRA Dispute Letters"). In each letter, Ms. Hindi provided the same information and exhibits yet again, and additionally explained that she had not received a substantive response to her previous dispute letter and provided additional proof of her identity, including a copy of her driver's license.

101.    Exhibits 5A, 5B, and 5C[2] are true and accurate copies of the January CRA Dispute Letters (redacted as to confidential information).

102.    Equifax, Experian, TransUnion, and Citibank received the January CRA Dispute Letters.

103.    Equifax, Experian, and TransUnion notified Citibank about the January CRA Dispute Letters.

104.    On January 12, 2023, Ms. Hindi also sent a letter to Citibank that outlined her dispute and included copies of each of the January CRA Dispute Letters she sent to the CRAs.

105.    Exhibit 6 is a true and accurate copy of the January 12, 2023, letter to Citibank.

106.    Citibank received the January 12, 2023 letter.

107.    In that letter, Ms. Hindi explicitly asked Citibank again to conduct an accurate investigation of the disputed charge, correct her charges and statements, refund any penalties Citibank assessed against her, and provide corrected information to the CRAs and fix her credit.

---

[2] Each letter bore Ms. Hindi's original signature

108. On January 24, 2023, Ms. Hindi sent a third CRA Dispute letter to Equifax ("Second January CRA Dispute Letter"). Ms. Hindi included with that letter the information and documents Equifax asked for in order to prove her identity—her driver's license and her social security card. Exhibit 7 is a true and accurate copy of 2nd January letter to Equifax.

109. Equifax received the Second January CRA Dispute Letter.

110. Equifax notified Citibank about the Second January CRA Dispute Letters.

111. All of the CRAs again willfully or negligently failed to conduct a reasonable reinvestigation based on the January CRA Dispute Letters and the Second January CRA Dispute Letter, as required by the FCRA, 15 U.S.C. § 1681i(a).

112. Namely, despite Ms. Hindi providing undisputable evidence that the $6,872.31 charge was factually inaccurate, belonging to a different person with a different credit card number, each CRA falsely stated that its reinvestigation confirmed the charge.

113. The CRAs did not receive any information confirming the charge other than—at most—a perfunctory and unsupported confirmation of the charge from Citibank.

114. The CRAs did not receive any information or document that would contradict the factual information reflected in the receipt.

115. In a letter dated January 24, 2023, Equifax responded to Ms. Hindi's letter by claiming it had reinvestigated and concluded the disputed charge was accurate.

116. In a letter dated January 24, 2023, Experian once again acknowledged receiving Ms. Hindi's CRA Dispute letters (complete with documents including photocopies of her driver's license, credit report, and credit card statement). Once again, Experian claimed it lacked sufficient information to conclude the letter had actually been sent by Ms. Hindi and refused to conduct a reinvestigation.

117.   Ms. Hindi received letters dated January 13 and January 27, 2023, from TransUnion in which TransUnion claimed it had reinvestigated her claims and concluded the disputed charge was legitimate.

118.   To date, no CRA has investigated the substance of Ms. Hindi's claims or taken action to repair or correct her credit, despite the fact that the disputed charge is clearly not hers.

119.   Citibank also willfully or negligently failed to conduct a reasonable reinvestigation, as required by the FCRA, 15 U.S.C. § 1681i(a) and 1681s-2(b).

120.   Specifically, Citibank failed to consider the credit card receipts in its possession that plainly showed that Ms. Hindi was not responsible for the $6,827.31 charge.

121.   Citibank verified as accurate to Equifax, Experian, and TransUnion that Ms. Hindi owed the alleged debt, which was a willful and malicious misrepresentation.

122.   Citibank continued to make derogatory reports to Equifax, Experian, and TransUnion, and the credit reporting agencies continued to include this false information in Ms. Hindi's consumer reports.

123.   The false information in the Equifax, Experian, and TransUnion credit reports was derogatory to Ms. Hindi on its face.

124.   The false information in the credit reports lowered Ms. Hindi's credit scores.

125.   The false information also suggests a debt-to-income ratio that is much higher than is accurate, impacting Ms. Hindi's ability to qualify for additional or supplemental credit to offset the harm caused by Citibank's false reporting.

126.   The false information was published by Equifax, Experian, and TransUnion to third parties.

127.   For example, Ms. Hindi held a credit card with Home Depot for many years before Citibank's false reporting.

128.   On January 21, 2023 (well after Ms. Hindi explicitly disputed the transaction with the CRAs), Home Depot made a "soft" inquiry into Ms. Hindi's credit.

129.   Almost immediately after that inquiry, Home Depot Credit Services cancelled Ms. Hindi's credit card because of Citibank's reporting, explaining in a January 30, 2023, letter that it found it "necessary" to close her account "as the result of a recent review of [her] account."

130.   Home Depot Credit Services explicitly cited the CRAs' and Citibank's false information as the reason for the closure.

131.   And when Ms. Hindi attempted to apply for a new credit card through another bank, the credit officer assisting her explicitly informed her that she was not approved for a new credit card because of the amount of money Citibank was reporting she owed and because her debt to income ratio was too high as a result.

132.   After Ms. Hindi submitted her disputes, all three CRAs published the false information about her to multiple entities, including (but not limited to): T-Mobile on January 12, 2023; Credit One Bank on January 12, 2023; Santander Consumer, USA on January 24, 2023; Discover Financial Services on January 31, and February 9, and 10, 2023; SyncB/Care Credit DC on January 30 and February 7, 2023; American Express on February 14, 2023; and TU Interactive on February 22, 2023.

133.   Ms. Hindi worries that the other companies will do as Home Depot Credit Services has done and cancel her credit or deny her credit based on these subsequent inquiries and the Defendants' failure to correct her credit despite her valid disputes.

134.   Citibank continues its campaign of harassment against Ms. Hindi, sometimes calling her multiple times per day to collect the debt.

135.   In the time since Citibank began reporting this false information, Ms. Hindi's life has been affected in many ways.

136.   For example, Ms. Hindi no longer has faith she can use a credit card for grocery shopping. As a result, she must try to ensure she carries enough cash with her to shop for her budgeted items at a time of unpredictable and rising prices. This, in turn, subjects her to greater uncertainty about her spending and the risks associated with an elderly woman carrying around large sums of cash.

137.   On more than one occasion, Ms. Hindi has completed her grocery checkout only to discover she did not have enough cash to cover the purchase, subjecting her to public embarrassment and emotional distress.

138.   At least once, Ms. Hindi has been informed that her other credit cards have been declined or rendered inoperable as a result of Citibank's false reporting.

139.   For example, Ms. Hindi recently tried to pay for a meal with a family member, but her card was declined, subjecting her and her family member to public embarrassment.

140.   Ms. Hindi's father immigrated to the United States with a 4th grade education and instilled in Ms. Hindi the importance of hard work and paying one's bills.

141.   Ms. Hindi grew up during the Great Depression, and she vividly remembers the embarrassment and humiliation people who could not afford to pay their bills suffered.

142.   And Ms. Hindi has always felt tremendous pride in being a financially responsible and independent woman.

143.   As a result, Ms. Hindi worries she will be required to pay charges she does not owe, and she suffers acute embarrassment and insecurity because of Defendants' misconduct.

144.    Ms. Hindi worries about needing to make unexpected or emergency purchases that would ordinarily be put on a credit card because she worries she will not have credit available to cover those expenses or purchases.

145.    Ms. Hindi's relationship with her children has been strained by Citibank's conduct.

146.    Ms. Hindi faces irreparable injury should Citibank continue pursuing her for the debt, harassing her, threatening her finances, and harming her credit.

147.    This injury includes the potential denial of credit, housing, and employment opportunities.

148.    Ms. Hindi was damaged by Defendants' misconduct.

149.    As a result of the false information on her credit report, Ms. Hindi's credit reputation was injured.

150.    Ms. Hindi lost credit opportunities as a result of Defendants' conduct.

151.    Ms. Hindi lost time and incurred various out of pocket expenses, including postage for the CRA Dispute letters and expenses for traveling to and from the post office and other locations to send the CRA Dispute letters.

152.    Defendants' conduct caused aggravation, frustration, humiliation, and other emotional distress to Ms. Hindi, resulting in physical and emotional symptoms.

153.    Citibank's conduct was malicious, willful, reckless, wanton, fraudulent, and in bad faith.

154.    Upon information and belief, Defendants' actions are part of a pattern of similar misconduct, justifying an award of punitive damages.

**Jury Demand**

155.    Plaintiff hereby demands trial by a six-person jury on all issues so triable.

## First Claim for Relief: Violations of the TILA

156. Defendant violated the TILA by imposing liability for unauthorized charges, failing to conduct a reasonable investigation, and as otherwise described above.

157. Plaintiff is entitled to actual damages plus statutory damages.  15 U.S.C. § 1640.

158. Plaintiff is entitled to attorneys' fees and costs.

## Second Claim for Relief: Violations of the FCRA by Citibank

159. Defendant Citibank failed to review and consider all relevant information submitted by Plaintiff.

160. Defendant failed to conduct a genuine and reasonable reinvestigation in response to Plaintiff's disputes.

161. Defendant failed to report to Equifax, Experian, and TransUnion that the information it reported about the account is inaccurate.

162. Defendant persisted in reporting information that it knew or should have known to be inaccurate and damaging.

163. Defendant's actions are willful or, in the alternative, negligent, violations of the FCRA, including 15 U.S.C. §§ 1681s-2(b) and 1681i.

164. Plaintiff is entitled to actual damages, statutory damages and punitive damages, costs and reasonable attorney fees.  15 U.S.C. §§ 1681n and 1681o.

## Third Claim for Relief: Violations of the FCRA by the CRAs

165. Defendants Equifax, Experian, and TransUnion failed to review and consider all relevant information submitted by Plaintiff.

166. Defendants failed to conduct a genuine and reasonable reinvestigation in response to Plaintiff's disputes.

167.   Defendants persisted in reporting information that they knew or should have known to be inaccurate and damaging.

168.   Defendants failed to delete inaccurate information from Plaintiff's credit report.

169.   Defendant's actions are willful or, in the alternative, negligent, violations of the FCRA, including 15 U.S.C. §§ 1681i and 1681e.

170.   Plaintiff is entitled to actual damages, statutory damages and punitive damages, costs and reasonable attorney fees.  15 U.S.C. §§ 1681n and 1681o.

**Third Claim for Relief: Violations of the Unfair Practices Act by Citibank**

171.   The foregoing transactions occurred in the regular course of Defendant Citibank's trade or commerce, and its actions are subject to the New Mexico Unfair Practices Act ("UPA").

172.   The foregoing actions of Defendant constitute unfair or deceptive trade practices within the meaning of the UPA, NMSA §57-12-2(d).

173.   Defendant's conduct also constitutes an unconscionable trade practice within the meaning of the UPA, NMSA §57-12-2(e).

174.   Defendant willfully engaged in these unlawful trade practices.

175.   As a result of Defendant's violations of the UPA, Plaintiff is entitled to recover actual or statutory damages, trebled, plus costs and reasonable attorney's fees.

176.   Plaintiff is also entitled to an injunction barring Defendant from continuing to collect on the alleged debt, including making derogatory reports to her credit, and barring Defendant from engaging in further unlawful debt collection activities.

**Fourth Claim for Relief: Breach of Contract by Citibank**

177.   Defendant Citibank's actions constitute a breach of its contract with Plaintiff.

178.   Defendant's breach of contract damaged Plaintiff.

179.   Defendant's breach of contract was malicious, fraudulent, oppressive, willful, or committed recklessly with a wanton disregard for Ms. Hindi's rights, such that punitive damages are appropriate.

180.   Plaintiff is entitled to actual damages and punitive damages.

**Fifth Claim for Relief: Breach of the Covenant of Good Faith and Fair Dealing by Citibank**

181.   Defendant Citibank's conduct violated the covenant of good faith and fair dealing implicit in all contracts by withholding the benefits of the contract from Ms. Hindi and/or by wrongfully and intentionally using the terms of the contract to harm Ms. Hindi.

182.   Plaintiff was damaged as a result.

183.   Citibank's breach of the duty of good faith and fair dealing was malicious, fraudulent, oppressive, willful, or committed recklessly with a wanton disregard for Ms. Hindi's rights, such that punitive damages are appropriate.

184.   Plaintiff is entitled to actual and punitive damages.

**Sixth Claim for Relief: Tortious Debt Collection by Citibank**

185.   Defendant Citibank's actions constitute unreasonable and tortious debt collection practices in violation of the doctrine enunciated by the New Mexico Supreme Court in *Montgomery Ward v. Larragoite*, 81 N.M. 383, 467 P.2d 399 (1970).

186.   Plaintiff is entitled to recover actual damages and punitive damages.

WHEREFORE, Plaintiff prays that this Court:

A.   Award actual, statutory, and punitive damages as set forth herein;

B.   Provide injunctive relief as set forth herein;

C.   Order declaratory relief that Plaintiff does not owe the debt to Citibank;

D.   Award costs and attorney's fees; and

E.      Award such other relief as this Court deems just.

Respectfully submitted,

FEFERMAN, WARREN & MATTISON

*/s/ Nicholas H. Mattison*
Nicholas H. Mattison
300 Central Avenue S.W., Suite 2000 West
Albuquerque, N.M. 87102
(505) 243-7773
(505) 243-6663 fax
nmattison@nmconsumerwarriors.com

-and-

HOLMES LAW FIRM, PC

*/s/ Kevin P. Holmes*
Kevin P. Holmes
5203 Juan Tabo Blvd. NE, Suite 2E
Albuquerque, NM 87111
(505) 433-1947
(505) 393-8589 fax
kevin@holmesnm.com